The next case is Rothschild Connected Devices Innovations v. Coca-Cola, 2024, 1253. We're ready when you are, Mr. Carey. Thank you. Good morning, Your Honors, and may it please the Court. I'm John Carey, Counsel for the Plaintiff, Patinor. There are two main issues in this appeal. The first issue is one of claim construction. The construction of only one term is at issue. The communication module term of the Sole Patent Institute, the 377 patent. Basically the order of the steps. That's correct, Your Honor. And doesn't the plain meaning of the claim dictate the order? Not in this case, Your Honor, because there are no explicit language in the claim that would compel an order of steps. Like in many of the other cases where you have words like first, second, before, after, and so forth. Here there is none of that. What about antecedent basis? Does the antecedent basis support that there is an order in the claim? It does not, Your Honor. And the reason why it doesn't here is the same reason it did in this Court's Resveronics case, which we cited in the briefing. The use of A to introduce one entity and then later in the claim refer to the same entity as B, whatever, doesn't compel an order of steps. It just means that you're talking about the same entities. So where it says a user interface module configured to receive an identity of a user and an identifier of the beverage, that has to be the same identity and identifier through the rest of the claim? Yes, Your Honor. It has to be the same information, but it doesn't mean that one thing has to be transmitted or received before another thing. It just refers to the same information. In this case, user identity. But it does mean that the identity and identifier of the beverage has to be received from the user interface module, right? That's correct, although that's not an issue in this appeal. There was a prior appeal, as Judge Post knows. I'm just saying that when you interpret the later terms, you've got to remember what happened before. Whatever it is that the communication module is dealing with, it has to be the identity of the user and the identifier of the beverage that was received by the user interface module. Well, not in terms of temporally, because it's an apparatus claim and we're just talking about components that do things, but the information has to be the same. The user IDs and the beverage identifiers that are processed in the communications module are the same user IDs and beverage identifiers that are processed in the user interface module. Maybe I'm not understanding, but the claim itself has the word and what we think is the second step of the sequence, and it says based on the identity of the user and the identifier. So why doesn't that come from having performed the first step first? It says based on, or am I completely misreading this claim? In the comm module there, Your Honor, the claim recites the receipt of beverage product preferences based on the user identifier and beverage identifier. And step one involves the transmit, transmit the identity of the user and the identifier, correct? So why wouldn't common sense dictate that one comes before two? I wouldn't call it a step, Your Honor. I would say that the comm module is a component of an apparatus claim that has certain capabilities, and one capability, it's got to be able to transmit certain information to a server. It also has to have a separate capability of receiving other data from the server, and then it has a third capability, required capability, of communicating certain information to a controller, which is another component within the beverage dispenser. And does that make sense? Well, no. There's a lot of discussion in the briefing about what rules we apply in different – if we apply different rules to method claims and apparatus claims, and you referred to that a couple of minutes ago. Why isn't the district court's reading of the claim as a sequential listing the most natural reading of the claim? Well, because first – under the law as terms of the difference between apparatus and method. The – this Court's precedent on this issue is, I believe, very well established in the Altieri's case and interactive gift cases. And where the claim language doesn't explicitly recite an order, for example, with words like first, second, third, before, after, then there's a legal presumption that the claims do not recite an order. So that's where we start here, because this claim doesn't have any explicit recitation of order. Now – It just has language, and language has meaning. And preferences based upon the identity of the user and the identifier of the beverage, it just naturally flows from the language. Here, Your Honor, we – our reading is that beverage product preferences are based upon the user ID and the preferences. And like our software expert said, steel is based on iron. Paint is based on oil and water. In this invention, the beverage product preferences are based on, i.e., they're built around user IDs and beverage IDs. And so the based on phrase modifies what the preferences are. And, in fact, that's the first introduction of the phrase preferences in the claim right there. And so the claim is telling the reader what the preferences are, how to understand what the preferences are. It's not dictating an order of steps. And, again, there aren't steps here. So all the claim requires is the COM module that has capabilities of transmitting and receiving and communicating certain data. And there's no – just like in the user interface module that was the subject of the prior appeal, it doesn't have to do any of those things before or after anything else necessarily. One of your arguments is regardless of the claim construction, the accused product satisfies the claim limitation, right? Could you walk through just a minute because I wasn't exactly clear on how you're reading the claim on the accused product. Could you walk through that? Yes, Your Honor. Before I delve into that, which is the second issue, I do have one critical comment to make on this first issue. And then if it's okay with Your Honor, I'll answer that question. Never pass up an opportunity to answer a judge's question. I was hoping to have the opportunity to answer that question. It's the second issue on appeal, and I will. I just – I could move back to claim construction later. I just logically – Go ahead. I mean, either answer the question right now or just back and forth. You're just wasting your time. Okay. On the claim construction issue of order of steps, there's one other critical piece of information here for the Court to keep in mind. It's this Court's well-settled precedent that claims should not be construed to exclude disclosed embodiments, the tronics and other cases. There is a disclosed embodiment of this patent in which the receipt of the beverage product preferences from the server takes place irrespective of the transmission of user IDs and beverage IDs from the dispenser's comm module. And that is cited in our brief. It's column 8 of the patent at lines 48 to 57. And in this disclosed embodiment, it says that periodically a server will download a database of product preferences, cross-reference to user IDs, to a plurality of beverage dispensers. And after a user identifies themselves to the dispenser via the user interface module and or the comm module, the controller retrieves the preferences from memory that had been downloaded from the server without accessing the server. So in this situation, in this embodiment, all right, the dispenser did not transmit anything to the server first in order to then get back the beverage product preferences. In this situation, the server periodically downloaded without being asked to by the dispenser. It automatically downloaded, periodically downloaded the preferences, and they were stored in the dispenser. And then the user comes up later and accesses those. It's quite different because then the element of transmitting the identity of the user and identifying the beverage to a server of the network isn't performed. In this embodiment, it's not. And this is how it works. This embodiment that I just cited is actually claimed in Dependent Claim 13, if you look at it. And Dependent Claim 13 depends on Claim 11, which is the independent claim we're talking about here. So in Dependent Claim 11, its scope has to be broad enough to cover the dependent claim, which doesn't require this sequential order. All right? So there you go. I mean, that's a disposed embodiment. It's within the scope of Claim 11, and it demonstrates that this required order of steps was not appropriately inferred and imposed on this claim. Moving on to Your Honor's question about even if you agree with the district judge about the order of steps claim construction, there's still infringement, and the district judge should not have granted summary judgment of non-infringement in the defendant's favor. We offered unrebutted evidence, which was never even refuted. Is this a DOE? You're right, Your Honor. It is. And what was this evidence? This evidence was deposition testimony from Coca-Cola's witnesses. Can you just walk through the theory? Like, what is it? Map the claim limitations to the accused product. It's really very simple, Your Honor. What the district court found. So the district court imposed this order of steps limitation on the convict. And what is your argument? We understand. We've read the records.  The three steps that the district court imposed had to be done in a certain order was first, comm module has to transmit user IDs and BEV IDs to a server, number one. And then, two, comm module has to receive back beverage product preferences from that server based on those IDs. And then, three, comm module communicates that information to a controller that pours the drink. Your accused product is the comm module. For the accused product, are you relying on the app? Well, okay. Under the original claim construction that was in force before the summary judgment propounded this brand new claim construction about order of steps, the accused component for comm module was the modem on the dispenser. And the modem does all three things. Indisputably, it does all three things. It just doesn't do them in the order that the judge came up with on summary judgment. The one thing it doesn't do in order of steps. I've got to stop you there because maybe I've misread the record in its entirety. But the judge, this was in the papers, in the filings, before the summary judgment motion, right? The other side's expert talked about the sequence of steps being required, right? This wasn't the first time we heard about this being the sequence from the district court's order. Am I wrong about that? The district court, they never brought this argument to the district court until they filed the summary judgment motion. It was not ever before the district court at any point in time. It wasn't referenced in any of the filings or in any of the expert reports that this was the sequence? Coca-Cola filed an expert report on remand. Can I just, you're saying no or yes to my question. Yes, on remand, their second expert report, their expert said there's an order of steps here. Even though it's not in the claim construction order, there's an order of steps here.  So it was in the record and it was argued before the claim construction, before the district court came up with it? It was not argued anywhere. It was just in a report, in a 100-page expert report. It was not presented to the court. They didn't ask the judge to do a new claim construction, modify his claim construction order, and enter this construction. Instead, they just moved for summary judgment, made the argument for the first time on summary judgment, the second summary judgment. Counsel, you're halfway through your rebuttal time.  Continue or say. Your Honor, to answer your question, the evidence of infringement under the sequential theory, the one thing that the modem doesn't do in the required order is just the first step, the transmission of the user ID and the BEV ID to the server. That is done in their system through the Freestyle mobile app, which is on the user's phone. And we've got all sorts of evidence on that that we cite in the brief. It's that when the user establishes their preferences using their phone app, the phone generates the beverage IDs and their user IDs, and it sends that information. I have a question I need to ask you.  So are you saying that the communication module and your alternative theory is the Freestyle mobile app combined with the modem on the dispenser? Yes. Okay. If there's an order of steps, the order of steps is met by the record evidence, which is unrebutted in the record, by the combination of the modem with the app. The app does the one step in the right order that the modem did not. And that evidence has never been rebutted. And it's how the system works indisputably, that the app sends the user ID, the BEV ID, to the server first, and then that server now has that information and is able to send it to the dispenser for the pouring of the beverage. So the theory is if this claim construction, this brand-new claim construction, which was thrust upon us at summary judgment, is correct, we still have a genuine issue of material fact regarding infringement under the combination of the app and the modem being the comm module. And the law is clear that a defendant cannot split the operations or the functions of a patented element into two things, that that still constitutes infringement under the doctrine of equivalence. Thank you, Your Honor. Thank you, counsel. You have used up all your time and there will be no rebuttal. Mr. Hughes. Good morning. Thank you, Your Honor. May it please the Court, Paul Hughes for the Coca-Cola Company. I'd be happy to begin anywhere the Court may wish to direct. I'll say, as my colleague said, there are two issues in the case. The first is the sequencing issue. The second is the doctrine of equivalence argument. I'll start with the sequencing unless the Court wishes for me to go elsewhere. Well, there is no equivalence issue. It's not a question of one substituting for another. It's a question of the order. It's claim construction, right? Well, on the doctrine of equivalence issue, Your Honor, or sorry, you're asking about the sequencing? Yeah, on the sequencing, Your Honor, I think it's just plain and ordinary meaning of the language that this recites various steps in which the information is transmitted. Then the server does things with it. It has to provide a user-generated beverage preference that is based on the information it received in the prior step. That's then received by the communication module, and then only after that information is received by the communication module can the communication module direct the controller to mix the particular beverage. So I think that the inherent logic of the claim, as the district court correctly found, is that it necessitates an ordered understanding of these steps. And again, I think that based on language is a very clear indicator. What about, I mean, the tricky thing in this case for me at least is what if we agree with the claim construction entirely? The problem is on the second issue in this case, the district court seems to have relied on the fact that this wasn't a claim construction, and therefore that was the basis upon which he rejected the DOE claim. And if we disagree with that, just that sort of regular premise, like was this claim construction or not, which is neither here nor there in most cases, because it's given, arguably it was claim construction, what do we do with the second piece of this case? Thank you, and I have a few different responses to that. Now, I think the framework for which the court would review this is abuse of discretion because this is the court saying this argument, which again, RCBI acknowledges, was not put before the court in the expert reports or in the infringement contentions. They recognize that they would have to go back and amend the expert reports, the infringement contentions, and essentially reopen discovery. So it's committed to the district court's discretion in case management as to whether to do so. So the starting point is the framework here is abuse of discretion from the district court. To the court's question, though, do we think of this as technically claim construction or summary judgment? I'm going to talk in a moment where there might be a little bit that's, I think, over-indexed on that question, but starting there, I think it's well understood that whenever a court is applying claim language, be it there's already a claim construction or if there's plain ordinary meaning to the facts of a particular case, that necessarily requires some refinement of the language. And what the district court here, I think, said and indicated at page 41 of the appendix is if in every time that the parties don't present something to the court because they understand it to be plain ordinary meaning, and then the court engages in refinement of plain ordinary meaning in applying that claim language to the particulars of the infringement record before it, if that can be called a new claim construction, such that the losing party basically can restart discovery all over, that there's no end to that. What the district court said at page 41 is that would permit parties opposing summary judgment to repeatedly move the goalposts by changing their arguments and reopening discovery whenever they lose. In order where I think the court's case law comes out on this, so my friend cites the Ionet case and the Texet case. And what those cases suggest is if a party doesn't have notice that there is a particular argument in a case, so in those cases if a district court sua sponte adopts a new argument that was never presented before the court, that would be unfair to a party. And the party in those circumstances has more right to say, I want to go back and amend my contentions and reopen discovery. Here, though, and I think Your Honor was getting to this with my colleague, this was quite clear that this was in the case. So this starts back in January of 2021. There was a hearing before the district court on remand, and RCBI said very clearly in this hearing that it was going to amend its contentions to include the Freestyle Act. At appendix page 10199, counsel said, so where we couldn't accuse the mobile app of being part of the infringing device before in light of its new construction, now we can and we will. Again, at that same page, the statement was, now we will supplement our contentions to assert that the mobile app is a component of the infringing device. So they were on notice that if they wanted to make this doctrine of equivalence argument, they had it available. And then moving forward to our expert report, this came in June of 2022. The expert report said that his understanding of the plain and ordinary meaning was sequencing, and that was a very strong component of his argument, that there was sequencing in the claims. This was not lost on RCBI because in its rebuttal report, this is in Mr. Curley's report at appendix page 19,692, disagrees based on what we've been calling the first argument, that there is no sequencing, so the quote-unquote post-porn message suffices, but never says at this time, oh, and I have an additional argument of the Freestyle device could be a doctrine of equivalence. It's only until we get to the opposition motion for summary judgment. That occurs in January of 2023. So two years after we were told that there would be amendments for the Freestyle app, and seven months after. When you make a very, very strong case, perhaps, on the lack of diligence, the difficulty is that the district court didn't rely on that. Am I wrong about that? Your Honor, what the district court relied on, I think, was the local patent rule, which says you need to go back and you had to ask to amend at some point earlier, and they didn't. And I think there's a reason why they didn't amend, because this wasn't briefed in the district court, because this issue just wasn't injected in the district court. But the app argument, I think, is essentially a dead-to-rights loser under this Court's recent case law in Cloud of Change v. NCR. Yeah, but what? Are you asking us on appeal to decide whether it's the merits of that case? So that's not helpful. Well, Your Honor, but what it does go to is what the district court said, was this was a strategic decision not to include it. The district court made the precise finding that this was a strategic call by RCDI to advance one theory and not the other theory. And I'm just suggesting the reason for that is because Coca-Cola cannot direct and control the user app, there's no contractual obligation that demands a user use this app, you would be in a circumstance where for it to be an apparatus, it has to be one person or one entity putting the apparatus into service and controlling all elements. And this Court's opinion in December of last year in the Cloud of Change case, I think, makes clear in that circumstance where you have a user who is engaging in particular activities, there has to be a very tight level of control, and the level of control that would exist here is far less than what the Court found insufficient in December in Cloud of Change. So I just think that underscores the tactical reasons as to why this was only appeared after it was clear that RCDI was going to lose on their principal theory of infringement that they sought to pivot. And I don't think it was an abuse of discretion for the District Court to say it was too late, and that's appropriate application of the Northern District of Georgia's local rules, but more broadly, the District Court's discretion to be able to manage its docket before it. One just small last point to Judge Stoll's question about the embodiment at the bottom of Column 8. This is Appendix 89, Column 8, Line 48 to 56. I think my colleague recognized that in that embodiment, the communication module never actually performed the first step of transmitting the identifier of the beverage to a server. So because that's not actually performed in the embodiment, I don't think that actually benefits RCDI in suggesting that there is some sort of tug against the sequencing that is required. At the end of the day, Your Honors, I think this is about the discretion of the District Court. This was an argument that they were well on notice of. For two years, we were told that there would be freestyle app would be amended in. There was seven months of knowledge from when the argument appeared in Coca-Cola's expert report, and there was a lack of due diligence. This is not a scenario in which a District Court opinion on summary judgment invented a new claim construction or some new argument that was otherwise unknown to the party. There was a lack of diligence here, and so I don't think the District Court abuses discretion in saying it was not going to restart over the discovery process in these circumstances that would open the floodgates, as the District Court judge pretty carefully observed in the opinion. I'd be happy to take any more questions, or else. Thank you. Thank you to both counsel and the cases submitted. Your Honor, no rebuttal. No rebuttal for you. You have two times.